## The Town of NOTTINGHAM *versus* The Town of BARRINGTON.

Persons residing in any town under the Provincial act of 5 Geo. 1, will gain a settlement in said town by a year's residence therein, notwithstanding the repeal of this act, by statute of 1792, by force of the proviso in said repeal. The proviso being construed to continue the Provincial act in force, in such cases, both as regards the settlement and warning.

A notice, signed by two persons as selectmen, will be considered as signed by a majority of the selectmen until the contrary be shown.

ASSUMPSIT for the support of William McDaniel and John Hill, two paupers, alleged to have their settlement in the town of Barrington.

The cause was tried upon the general issue, in the court of common pleas, at March term, 1833, in this county, and a verdict taken for the plaintiff, subject to the opinion of the court upon the following case.

McDaniel was born in Barrington, and resided there

until he removed into Nottingham, which was several months prior to the 3d March, 1795. He continued to reside in Nottingham, from the said 3d March, until his death in 1829.

A warrant to warn the said McDaniel to depart from the town of Nottingham, dated March 3d, 1795, directed to the constable of the town, and signed by Thomas Bartlett and Jonathan Cilley, "selectmen," was issued and served upon McDaniel on the said 3d March, and filed with the clerk of the court on the 27th May, 1795.

John Hill resided in Barrington more than a year prior to March, 1792. On the 5th March, 1792, he removed to Nottingham and resided there several years.

A warrant to warn the said Hill to depart from the town of Nottingham, dated 5th March, 1792, and directed to either of the constables of the town of Nottingham, was duly issued by the selectmen, and served upon Hill, on the 26th March, 1792, by Jacob Davis, who stated in his return, that he acted in pursuance of the warrant, and was filed with the clerk of the court on the 20th December, 1792. But the time of Hill's abode there did not appear in any way.

A notice to the selectmen of Barrington, dated 14th March, 1829, stating the sums that had been expended by Nottingham in the support of the paupers, and signed by " Bradbury Bartlett, J. S. Tuttle, selectmen," was duly served on the 1st April, 1829, and filed in the clerk's office, 4th April, 1829.

The jury found a verdict for the plaintiff for the amount expended for the maintenance of the said paupers, and the defendant moves for a new trial on the above statement of facts.

*Hale* & *Goodrich*, for Barrington. We are entitled to a new trial in this case. McDaniel gained a settlement in Nottingham. The warning served upon him was not a legal warning. In the first place it does not appear that the warrant was returned to the clerk's office within a

year from the time when he went to Nottingham to reside. In the next place, the warrant does not appear to have been signed by a majority of the selectmen. It is also a fatal objection to the warrant that it was not signed by all the selectmen.

Hill also gained a settlement in Nottingham. The warning served upon him was not a legal warning, because the time he had resided there was not stated in the warrant, and because the warrant was not served by a constable. At least it does not appear to have been.

The statutes relating to the settlement of paupers are to be construed strictly. 3 N. H. Rep. 81 and 278.

The notice to the selectmen of Barrington of the sums expended by Nottingham, in the support of the paupers, is not sufficient. It does not appear to have been signed by a major part of the selectmen as the statute directs.

*Sullivan*, for Nottingham.

Upham, J. delivered the opinion of the court.

McDaniel removed to Nottingham some months prior to March 3d, 1795, and resided there from that time till his death, in 1829. The precise time when he removed to Nottingham does not appear. The statute of 1791, which declared that a settlement should be gained by residing in a town a year without being warned to depart, was repealed on the 1st of January, 1796, since which time no settlement could be gained in this state by residing in a town a year. It is, then, clear, that unless McDaniel removed to Nottingham prior to January 1st, 1795, he gained no settlement there by residence.

It is not disputed that he had a settlement in Barrington when he removed to Nottingham. The burthen of proof was then upon Barrington to show that he gained a settlement in Nottingham. And as it was not shown that he removed to Nottingham early enough to gain a settlement under the statute of 1791, before it was repealed, his settlement must be considered as remaining in Barrington.

If it had appeared that McDaniel went to Nottingham before the 1st of January, 1795, the exception that the warning does not appear to have been returned to the clerk's office within a year from the time he went to Nottingham, must have prevailed. If he resided there a year before the repeal of the statute, he gained a settlement, unless duly warned to depart ; and the burthen of showing the warning completed within the year by a return of the warrant, would have been upon Nottingham. But this point is unessential until the residence required by statute has been proved, and as this has not been done, the plaintiff is entitled to recover the amount of McDaniel's support.

It is not disputed that Hill was settled in Barrington unless he gained a settlement in Nottingham. He removed to Nottingham, *March* 5, 1792. The provincial act was repealed the 15*th of September*, 1792, and of course he gained no settlement under that act by residing in Nottingham a year, unless the proviso in the repealing act continued the provincial act in force. In the case of *Gilford* v. *New Market*, in the county of Strafford, March term, 1833, this court was unanimously of opinion that the proviso had this effect, and the cases militating with this decision were thereby overruled. *Exeter* v. *Stratham*, 2 N. H. Rep. 102. Hill resided in Nottingham for several years succeeding his removal to that town, and he therefore gained a settlement there, unless duly warned out in conformity to the provincial act. By that act the time of the pauper's residence in town must be stated, either in the warning, or the officer's return. That this fact should appear was decided in the case *Loudon* v. *Deering*, 1 N. H. Rep. 13, and the same question was decided in 10 Mass. *Hamilton* v. *Ipswich*, 506. As the time of residence in this case is not stated, either in the warning, or the officers return, the warning is defective, and for aught that appears, Hill's settlement is still in Nottingham. The ver-

VOL. VI. 39.

Nottingham
v.
Barrington.

dict is, therefore, erroneous, as regards any sums expended for his support.

It is objected that the notice of the sums expended for the support of the paupers, by the town of Nottingham, does not appear to have been signed by a major part of the selectmen. But it is well known that towns in this state, very rarely, if ever, choose more than three selectmen, and we think it may very safely be presumed that there were no more than three selectmen in Nottingham until the contrary is shown. We should the more readily act upon such a presumption in cases of this kind, because if the fact be otherwise, in any case, it can be easily shown by the records of the town.

These notices are usually signed by two or three persons as selectmen, and no one has before ever thought of requiring evidence that they were a major part of the selectmen. 2 N. H. Rep. 470 and 530; 5 ditto, 348.

This exception does not prevail, but as a general verdict was rendered in behalf of the plaintiff for the support of both the paupers, and for the reasons assigned, it is erroneous as regards one of them, and the verdict must be set aside, and a

*New trial granted.*